IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRYAN ROTHAMEL, *Plaintiff,* <br><br> v. <br><br> FLUVANNA COUNTY, VIRGINIA, *Defendant.* | CASE NO. 3:11-cv-00002 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |
| COMMONWEALTH OF VIRGINIA, *Amicus Supporting Defendant.* | |

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (docket no. 23) and Defendant's Response to Motion for Summary Judgment (docket no. 25). At Defendant's request, and upon the consent of Plaintiff, Defendant's response in opposition shall be converted into a cross-motion for summary judgment.[1] The parties agree to submit the matter for decision on the motions and to dispense with the need for a bench trial. I have fully considered the arguments and authorities set forth in the parties' filings, as well as those presented at the August 11, 2011 hearing. For the following reasons, I will grant Plaintiff's motion for summary judgment and deny Defendant's motion.

## I. BACKGROUND

Plaintiff Bryan Rothamel challenges the constitutionality under the First Amendment of an ordinance of Fluvanna County, Virginia that restricts the display or use of the image of the

---

[1] *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.").

Case 3:11-cv-00002-NKM-BWC   Document 37   Filed 09/02/11   Page 1 of 24   Pageid#: 187

official seal of Fluvanna County (the "County"). Plaintiff requests a declaration that the ordinance violates the First Amendment of the United States Constitution and that his uses of the seal constitute protected speech under the First Amendment. Rothamel also seeks injunctive relief. Since October 2009, Rothamel has operated a blog on the Internet entitled "FLUCO," found at http://flucoblog.com, for which he writes about news and events in Fluvanna County. On numerous occasions, Rothamel placed the official seal of the County next to or preceding news articles and commentary that concerned the County. Rothamel's inclusion of the seal near the articles was intended to indicate that the written material was about County government. *See* Rothamel Decl. ¶ 3. Rothamel also scanned into his computer and displayed on his blog verbatim news releases issued by the County on which the County had already affixed the official seal. *Id.* These were represented as County news releases. Rothamel did not display the seal on the blog for commercial purposes. *Id.* at ¶ 7.

Fluvanna County is authorized by the Commonwealth to have a county seal. Va. Code Ann. § 15.2-1402. Although the County had used its official seal for several years, it had never adopted the seal by ordinance or formally provided for regulation of its use. On September 15, 2010, the County held a public meeting to consider the adoption of an ordinance prohibiting the display of the Fluvanna County seal unless expressly authorized by the Fluvanna County Board of Supervisors (the "Board"). Rothamel claims that the ordinance was proposed to curtail his use of the seal. He attested that "shortly before the enactment of the ordinance, I learned that some supervisors were upset about my blog and intended to prohibit my use of the county seal." Rothamel Decl. ¶ 5. Rothamel submitted into the record the cover email used by the County for the draft ordinance, which showed that the ordinance was drafted at the direction of the Board after having been apprised that "a blogger had begun using the seal on the internet to advertise

his product."  Also in the record is a copy of the minutes from the Board's September 15, 2010

meeting on the ordinance.  In introducing the ordinance for discussion and vote, a member of the

Board made the following statement:

> What triggered this, was, if the Board will recall, a couple of
> months ago, we discovered that the County Seal was being used on
> a private website on the internet and there were several people that
> misunderstood the use of the County Seal and thought this was
> official publication of the County.  It wasn't, it was a private
> citizen and that's what triggered this.  I suggested that one way to
> deal with this would be to adopt an ordinance; because if you adopt
> an ordinance it becomes part of the county code and it gives
> greater public notice of the county's policy in this regard.

Rothamel was the only member of the public to make a comment at the meeting once it

was opened for public discussion.  Rothamel stated that he believed that it was his use of the seal

on his blog that caused the Board to draft the ordinance.  Rothamel explained that his display of

the seal on his blog was for news reporting and criticism.  He asked whether his use of the seal

would be permitted under federal law or whether it would violate the proposed ordinance.  In

response, a member of the Board made clear that "[Rothamel's] actions were the precipitating

cause of formalizing this," but his actions were not "the object" of the ordinance.  Rather, the

ordinance's purpose was to clarify the County's policy on the use of the seal to the public and to

ensure that the seal is not used to mislead another into thinking that a private individual is

"acting on official county business" when he is not.  With regard to Rothamel's request for

clarification about the permissibility of his particular use of the seal, a member of the Board

stated:

> It is a matter of fact, there is authority that using . . . [the] seal
> without authority is in fact imperatively unlawful.  Now I haven't
> gotten into that and I'm not trying to intimidate anybody, if Mr.
> Rothamel thinks he has got the right to use it then he can go ahead
> and do it and if he infringes it then it will be up to the county to
> decide if it wants to try and to enforce this against him and if it

does then he will have an opportunity to defend it. But he is not the object of this. . . . Now if Mr. Rothamel has got the right to do this by Federal law or some other way, then he has a perfect right to assert that.

The proposed ordinance was adopted by the County at the September 15, 2010 meeting. Rothamel stopped displaying the seal after the ordinance's adoption for fear of being subject to criminal prosecution. Rothamel Decl. ¶ 6. He brought this suit for declaratory and other relief on January 3, 2011. The County amended the ordinance on February 16, 2011, and it is the amended version that is being challenged here.[2] The ordinance has not been enforced against Plaintiff. The current regulation states as follows:

Article 7. Official County Seal

Sec. 2-7-1. Adoption of County Seal.

The seal of Fluvanna County is hereby adopted to be the seal currently in use by the County. The seal consists of a picture of the historic former Point of Fork Arsenal showing the Fluvanna River in the background with a branch from a persimmon tree above it in a circle, surrounded by the words "FLUVANNA COUNTY VIRGINIA—1777". The seal shall still constitute the seal whether in black and white, color or other hue or tone combination and regardless of the size, character or medium in which the same shall be depicted. (Ord. 9-15-10)

Sec. 2-7-2. Seal Deemed Property of the County; Unauthorized Use Prohibited.

The seal of Fluvanna County shall be deemed the property of the County; and no person shall exhibit, display, or in any manner utilize the seal or any facsimile or representation of the seal of Fluvanna County for non-governmental purposes unless such use is specifically authorized by law. (Ord. 9-15-10; Ord. 2-16-11)

Sec. 2-7-3. Violation and Penalty.

---

[2] Plaintiff initially challenged the September 15, 2010 ordinance and then filed an amended complaint on March 8, 2011, after the ordinance was revised.

4

> Any person violating the provisions of this section shall be punished by a fine of not more than $100, or by imprisonment for not more than 30 days or both.  (Ord. 9-15-10; Ord. 2-16-11)

The Commonwealth of Virginia (the "Commonwealth") appears in this matter as an amicus curiae and supports the County's position because the language of the state statute restricting the use of the official state seal closely tracks that of the ordinance.  The state statute implicated by this suit provides as follows:

> § 1-505.  Seals deemed property of Commonwealth; unauthorized use; penalty
>
> The seals of the Commonwealth shall be deemed the property of the Commonwealth; and no persons shall exhibit, display, or in any manner utilize the seals or any facsimile or representation of the seals of the Commonwealth for nongovernmental purposes unless such use is specifically authorized by law.
>
> Except for the authorized commercial use of the seal as provided in § 2.2-122, any person violating the provisions of this section shall be punished by a fine of not more than $ 100, or by imprisonment for not more than 30 days or both.

Va. Code Ann. § 1-505.

## II. APPLICABLE LAW

The court should grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  Once a motion for summary judgment is properly made and supported, the non-moving

5

party may not rely merely on allegations or denials in its own pleading, rather it must set out "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The standard is the same for cross-motions for summary judgment. The court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied. 10A The Late Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 2010). "But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Id.*

### III. SUBJECT MATTER JURISDICTION

A court may consider matters of subject matter jurisdiction *sua sponte*. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *United States v. Hays*, 515 U.S. 737, 742 (1995) ("The question of standing is not subject to waiver. . . . The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (citation omitted); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter

6

jurisdiction *sua sponte* whenever it may be lacking."). "[T]he irreducible constitutional minimum of standing contains three elements": (1) an "injury in fact," meaning an injury that is "concrete and particularized" and "actual or imminent"; (2) a "causal connection between the injury and the conduct complained of," meaning that the injury is fairly traceable to the defendant's actions; and (3) a likelihood that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing. *Id.* at 561.

The dispositive inquiry here involves the test's first prong: the existence of an actual or threatened injury.[3] Because the ordinance has not been enforced against Plaintiff, I must consider whether Plaintiff was subjected to a credible threat of prosecution. As the Supreme Court has made clear, it is not necessary that a person expose himself to arrest or prosecution under a statute in order to challenge that statute in a federal court. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Steffel v. Thompson*, 415 U.S. 452, 458-60 (1974). Rather, a credible threat of present or future prosecution under a criminal statute itself works an injury that is sufficient to confer standing to mount a pre-enforcement challenge to that statute. *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999); *accord Doe v. Bolton*, 410 U.S. 179, 188 (1973). In the First Amendment context, "[a] non-moribund statute that facially restricts expressive activity by the class to which the plaintiff belongs presents such a credible threat, and a case or controversy thus exists in the absence of compelling evidence to

---

[3] If Rothamel suffered a cognizable injury, the second and third prongs of the test are easily met. Any injury can be traced to the existence and threatened enforcement of the challenged ordinance and would be redressable through declaratory or injunctive relief.

the contrary." *N.C. Right to Life v. Bartlett*, 168 F.3d at 710 (internal quotation marks omitted).[4]

"This presumption is particularly appropriate when the presence of a statute tends to chill the exercise of First Amendment rights." *Id.*; *see also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (allowing a First Amendment pre-enforcement suit where the existence of "an actual and well-founded fear that the law will be enforced against [the plaintiffs]" is alleged). The Supreme Court has cautioned, however, that fears of enforcement that are "imaginary or wholly speculative" are insufficient to confer standing. *Babbitt*, 442 U.S. at 302.

The Supreme Court has found the existence of a credible threat of prosecution where a for-profit fundraising company alleged that it was directly informed by the Secretary of State of Maryland that if it refused to comply with the provisions of a statute governing charitable organizations, it would be prosecuted. *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 954-55 (1984). The company bringing suit also alleged that it lost a contract because of the limitation imposed by the law. *Id.* at 954. In another case, the Supreme Court held that a person distributing handbills at a shopping center had standing to challenge a statute where he was twice warned to stop handbilling and was told by the police that "if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted." *Steffel*, 415 U.S. at 459. Further, the plaintiff's companion, who was also handbilling, was actually prosecuted, demonstrating the credibility of the threat. *Id.*

Prosecution of a plaintiff need not be explicitly threatened for the plaintiff to show the existence of a credible threat of arrest. In *North Carolina Right to Life v. Bartlett*, a group challenged, among other things, North Carolina's definition of "political committee" after it

---

[4] The test for standing set forth in *North Carolina Right to Life v. Bartlett* was reaffirmed by the United States Court of Appeals for the Fourth Circuit in *North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274 (4th Cir. 2008). There, the court found that "[s]ince the statutes challenged by the plaintiffs threaten to subject them to prosecution, and the plaintiffs are therefore 'chilled' from engaging in potentially protected First Amendment political expression, standing exists in this case." *Id.* at 279 n.2.

8

became concerned that it might be considered a "committee" if it distributed a voter guide, a status that would require it either to register and regularly file reports or to face criminal penalties. 168 F.3d at 709. To ascertain whether that fear was well-founded, the group wrote to the State Board of Elections, which "did not indicate that it would interpret the statute to mean anything other than what its plain language would suggest." *Id.* at 710. Although in the twenty-five years since the statute's enactment, the State had never interpreted it to apply to groups engaging only in issue advocacy, the plaintiff group refrained from distributing its guide based on the possibility of prosecution. *Id.* The group brought suit in federal district court challenging North Carolina's definition of political committee on the ground that it included entities that engage solely in issue advocacy. *Id.* at 709. On these facts, the United States Court of Appeals for the Fourth Circuit found that the plaintiff's fear of prosecution was reasonable because the statute's plain language appeared to apply to its distribution of voter guides. *Id.* at 710.

The Fourth Circuit rejected the State's argument that its assurance that it does not interpret the statute to encompass issue advocacy—a position that the State took in litigation—rendered the threat of prosecution speculative. *Id.* at 710-11. In the absence of a formal rule exempting issue advocacy from the statute, the court observed that the plaintiff would be left "with nothing more than the State's promise" that it would not seek prosecution. *Id.* at 711. Without a guarantee that the State "might not tomorrow bring its interpretation more in line with the provision's plain language," the court held that the plaintiff "will suffer from the reasonable fear that it can and will be prosecuted for failing to register and file the necessary disclosures, and its constitutionally protected speech will be chilled as a result." *Id.*; *see also Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 388 (4th Cir. 2001) (suggesting, in dicta, that a federal agency's policy of nonenforcement, which was adopted in a closed meeting

9

and recorded in the meeting minutes, might not be sufficient to remove the threat of prosecution because "[a] simple vote of the [Federal Election Commission] . . . could scuttle the policy").

The County ordinance at issue in this case, like the statute in *North Carolina Right to Life v. Bartlett*, facially restricts expressive activity.[5]  By its plain language, it prevents individuals from using or displaying the seal for nongovernmental purposes unless specifically authorized by law.[6]  No exemption is provided in the ordinance for use of the seal in news reporting and commentary, as Rothamel employed it.  The record shows that Rothamel displayed the seal on his blog on numerous occasions but discontinued use of the seal upon the adoption of the ordinance for fear of being subject to criminal prosecution for his activities.  Although Rothamel would like to continue displaying the seal on his blog, his speech is being chilled by the ordinance, violations of which carry a criminal penalty and up to thirty days imprisonment.  He sought informal guidance from the County Board of Supervisors about its applicability to his use of the seal, but received no assurance that his use of the seal did not fall under the ordinance.  Instead, the Board stated "if Mr. Rothamel thinks he has got the right to use it then he can go ahead and do it and if he infringes it then it will be up to the county to decide if it wants to try and to enforce this against him and if it does then he will have an opportunity to defend it."  The Board deflected Rothamel's attempt to discern the precise scope of the ordinance by deferring to the ordinance itself, emphasizing that the ordinance provided adequate notice to the public of the Board's policy on use of the seal.  The situation presented here is remarkably similar to that in *North Carolina Right to Life v. Bartlett*, where the for-profit fundraising group sought guidance

---

[5] The County ordinance, having been recently adopted, was not moribund.  *Compare to Doe v. Duling*, 782 F.2d 1202, 1204, 1206 (4th Cir. 1986) (holding that plaintiffs failed to show "even a remote chance that they are threatened with prosecution" under law prohibiting fornication and cohabitation, which had not resulted in a conviction since 1883 and was "a matter of historical curiosity").

[6] I address the interpretation of the phrase "specifically authorized by law" in greater detail in my discussion on the merits.

from the State on the legality of their activities under the statute, and the State directed the group to the statute's plain language. The Fourth Circuit found that the group reasonably believed there was a credible threat of prosecution from the State, even though the statute had never been enforced in that manner in its twenty-five year history. Here, the ordinance's recent vintage and lack of enforcement history yields even greater uncertainty about how it might be interpreted and enforced.

The possibility that the ordinance was drafted and passed directly in response to Rothamel's use of the seal further separates this case from one in which the threat of enforcement is merely "imaginary or wholly speculative." Although the evidence in the record is not sufficient for me to find that the County drafted the ordinance with the intention of making Rothamel's particular use of the seal criminally punishable, it is hard to mistake that the display of the seal on Rothamel's blog raised the issue of the seal's private use to the attention of the County and was "the precipitating cause of formalizing" the County's policy on the seal. Naturally one whose conduct triggers the drafting of a criminal proscription, the language of which plainly encompasses that conduct, has reason to fear prosecution for that conduct. The Fourth Circuit has recognized as much. *See Ostergren v. Cuccinelli*, 615 F.3d 263, 270 n.7 (4th Cir. 2010) (finding standing to bring First Amendment challenge to Virginia's Personal Information Privacy Act where the Act had been amended in direct response to the plaintiff's display of social security numbers on her website).[7]

The County fails to supply compelling evidence to overcome the presumption that a case or controversy has been presented by the facially restrictive ordinance. I am directed to three postings on Rothamel's blog after this suit was initiated that incidentally display the official seal

---

[7] It was also evident that a credible threat of enforcement existed in *Ostergren* because there the Virginia Attorney General had informed the plaintiff that he planned to initiate prosecution of her. *Ostergren v. Cuccinelli*, 615 F.3d 263, 269, 270 n.7 (4th Cir. 2010).

Case 3:11-cv-00002-NKM-BWC  Document 37  Filed 09/02/11  Page 11 of 24  Pageid#: 197

of the Commonwealth in the background of photographs of Board members. This, argues the Commonwealth, shows that Rothamel was not actually chilled by the ordinance governing the County seal, as the laws regulating use of the seals of the County and the Commonwealth are nearly identical. But Rothamel has not claimed that his expressive use of the state seal has been chilled, and the state statute is not before me today. Rothamel's claim that the County ordinance has chilled his expressive use of the County seal has not seriously been questioned. Further, though the text of the laws is similar, the state statute was not passed in response to Rothamel's actions, the state statute has a lengthier enforcement history from which Rothamel might draw different conclusions about his susceptibility to prosecution, and the display of a photograph including a seal is not the same use of the seal as is presently implicated.

The County takes the position in litigation that it would not prosecute Rothamel's display of the seal next to news stories or in official news releases. The County's post-suit promise that it will not seek prosecution does not render the threat of enforcement against Rothamel speculative in light of the continuing danger that the plain language of the ordinance will be interpreted in the future to proscribe the uses of the seal contemplated by the plaintiff. *See N.C. Right to Life v. Bartlett*, 168 F.3d at 711; *cf. United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). In sum, I am assured that the plaintiff has standing to bring this action.

## IV. First Amendment Challenge

Rothamel first attacks the constitutionality of the ordinance under the First Amendment as applied to his display of the seal next to news stories and his posting of official County news

releases containing the seal. The County, apparently recognizing the possibility that the application of the ordinance to Rothamel's expressive activity would be unconstitutional, takes the position that the ordinance can and should be interpreted so that it does not forbid the manner in which Rothamel displayed and wishes to continue displaying the seal. The County recites the principle that a court should apply a narrowing construction to a statute to save an otherwise unconstitutional law. *See Gonzales v. Carhart*, 550 U.S. 124, 153-54 (2007) (stating that it is an elementary rule of statutory construction that every reasonable construction should be utilized to save a statute from unconstitutionality); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (holding that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, [the statute should be construed] to avoid such problems unless such construction is plainly contrary to the intent of Congress"). The Supreme Court has explained that narrowing constructions are only appropriate where "the text or other source of congressional intent identifie[s] a clear line that [a] [c]ourt could draw." *Reno v. ACLU*, 521 U.S. 844, 884 (1997). Courts must be careful not to invade upon the legislative domain, and a court should never "rewrite a . . . law to conform it to constitutional requirements." *Reno*, 521 U.S. at 884-85. But a narrowing construction of a state law is not binding upon state courts because a federal district court lacks jurisdiction to authoritatively construe state legislation. *Va. Soc'y for Human Life*, 152 F.3d at 270. Thus, even if this Court interprets the ordinance such that it does not reach the speech of Rothamel, his speech may still be chilled because a state court could adopt a broader construction of the ordinance sufficient to reach Rothamel's speech and obtain a conviction. *See id.* Yet the Supreme Court has stated that if a narrowing construction of a state statute "is reasonable and readily apparent," then federal courts have the power and the duty to issue such an interpretation.

13

*Boos v. Barry*, 485 U.S. 312, 330 (1988); *see also Legend Night Club v. Miller*, 637 F.3d 291, 300-01 (4th Cir. 2011); *Va. Soc'y for Human Life*, 152 F.3d at 270.

Without a narrowing construction, the ordinance would undoubtedly forbid Rothamel from displaying the seal in the ways in which he desires. His uses of the seal are nongovernmental and entail displaying a facsimile or representation of the seal on his blog. To avoid the question of whether the County can constitutionally prohibit such speech, the County urges the Court to construe broadly the exemption contained in the ordinance for uses of the seal "specifically authorized by law." According to the County and the Commonwealth, the term "law" includes federal, state, and local legislative enactments, as well as the U.S. Constitution and the Constitution of the Commonwealth of Virginia and the body of federal and state law interpreting them. In other words, the ordinance should be read to exclude from its proscription all uses of the seal that would constitute protected speech under the First Amendment.

The problem with the County's proposed reading of the ordinance's exception is that it ignores the requirement that the law "specifically" authorize the use of the seal. "Specifically" is defined as "[i]n a specific or definite form or manner." Oxford English Dictionary (def. 2) (2d ed. 1989). "Specific," in turn, is defined as "[p]recise or exact in respect of fulfilment, conditions, or terms; definite, explicit," *id.* (def. 4(a)), or "[e]xactly named or indicated, or capable of being so; precise, particular," *id.* (def. 4(b)). The use of the adverb "specifically" as a modifier of the type of legal authorization needed to exempt the use of the seal indicates that the legal authorization must be precise, definite, or explicit. The phrase "unless . . . authorized by law," on its own, is far-reaching. The addition of the term "specifically" by the drafter of the ordinance to the phrase "authorized by law" shows the drafter's intent to limit the reach of the exception, which otherwise might be construed expansively. It is most likely that the phrase

"specifically authorized by law" is meant to allow uses of the seal that are explicitly permitted by a legislative enactment or a County governing body, though a binding case that is exactly on point would probably also suffice.[8]  Giving effect to the word "specifically" suggests a narrow interpretation of the exception that is contrary to the sweeping construction proposed by the County.  The County's reading of the exception is only reasonable if the word "specifically" is struck altogether.   Doing so would not be consistent with the general rules of statutory construction, which direct courts to presume that legislatures use each word for a reason and to attempt to construe laws to give effect to every word.  *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (providing that a court is "obliged to give effect, if possible, to every word [the legislature] used"); *Virginia v. Browner*, 80 F.3d 869, 877 (4th Cir. 1996) (stating that a court should not "construe a statute in a manner that reduces some of its terms to mere surplusage").

Legislatures know how to draft exceptions to prohibitions for protected First Amendment activity.  The phrasing of the exception in this ordinance does not resemble other recognized exceptions.  For example, in *Schleifer v. City of Charlottesville*, a Charlottesville ordinance established a nocturnal curfew for minors under the age of seventeen but provided an exception for those minors who are "exercising First Amendment rights protected by the United States Constitution, such as the free exercise of religion, freedom of speech and the right of assembly."

---

[8] No binding case addressing the extent to which legislatures lawfully can prohibit use of an official government seal under the First Amendment has been cited by the parties, and I have located none.  In a case decided by the Alaska Court of Appeals, a state statute forbidding the use of the official state seal "for any advertising or commercial purpose" was upheld because the regulation was narrowly drawn so that it did not prohibit any non-commercial uses of the state seal.  *State v. Robart*, 988 P.2d 1114, 1115 (Alaska Ct. App. 1999).  Even if considered, this case does not address the authority to prohibit the non-commercial speech at issue here.

15

159 F.3d 843, 853 (4th Cir. 1998). The court upheld the ordinance against the assertion that the exception was unconstitutionally vague because it accorded standardless discretion to law enforcement officers and it forced citizens to learn a complex body of constitutional law in order to comprehend its scope. *Id.* In contrast to the Fluvanna County ordinance, which does not name the First Amendment, the Charlottesville ordinance clearly exempts persons exercising their First Amendment rights. The Fluvanna County ordinance also does not resemble more particular exceptions for protected First Amendment activity, which appear in a variety of settings. *See, e.g.*, 18 U.S.C. § 504 (exempting, from prohibition on counterfeiting, the printing of illustrations of United States postage stamps and currency subject to restrictions on the color and size of such illustrations and ensuring that the reproduction of such illustrations for the "legitimate use" of "businesses, hobbyists, press or others" is not "unduly restricted"); Va. Code Ann. § 4.1-226(2) (providing for penalties for certain erotic activities in an alcohol-licensed establishment but exempting "persons operating theaters, concert halls, art centers, museums, or similar establishments that are devoted primarily to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value").

I take seriously my obligation to construe an enactment to avoid problems of constitutionality, but I cannot find the ordinance "readily susceptible" to the narrowing interpretation proffered by the County. *See Legend Night Club*, 637 F.3d at 300.[9] The County could have provided for a broad exception for the exercise of First Amendment rights if it so desired, but instead it limited the exemption to specifically authorized uses. I do not have the power to rewrite the ordinance to conform it to constitutional requirements. *Reno*, 521 U.S. at

---

[9] Having determined that the interpretation of the ordinance proposed by the County and the Commonwealth is not available under its plain language, I decline to certify the question to the Supreme Court of Virginia.

884-85. Because I find that Rothamel's display of the seal falls under the prohibition of the ordinance, I must proceed to assess whether the ordinance infringes on Rothamel's right to free speech.

The parties disagree about which level of review applies to this ordinance. Rothamel argues that his display of the seal constitutes speech, and therefore the restriction on his speech is invalid unless the County shows it has a compelling interest and has used the least restrictive means of furthering that interest. This type of judicial review is known as strict scrutiny. *See Sable Commc'ns of Cal., Inc. v. Fed. Commc'ns Comm'n*, 492 U.S. 115, 126 (1989). In contrast, the County takes the position that Rothamel's display of the seal does not involve the use of the written or spoken word to convey his message, so it should be viewed as expressive conduct and reviewed under intermediate scrutiny. Pursuant to that level of review, the law will be upheld if the government shows the law is necessary to achieve a substantial or important governmental interest, and the law is narrowly tailored to that interest. *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968). Both positions have some merit. I need not decide this question, though, because I find that the ordinance cannot survive even the intermediate standard of review urged by the County.

The County submits that the purpose of the ordinance is "to prohibit nongovernmental uses of the Seal . . . that would have the effect of implying the authorization and approval of the County government when it had neither authorized nor approved the use." Def.'s Resp. Mot. Summ. J. at 3. The interest in preventing private individuals or entities from conveying the false impression of having governmental sponsorship or approval is surely an important one. Thus, I must focus on whether the ordinance is narrowly tailored to further that interest. The ordinance makes criminal a wide range of activity. Unless the exhibition, display, or use of the seal or an

17

exact copy or representation of the seal is for governmental purposes or is specifically authorized, it is illegal and punishable by fine or imprisonment under the ordinance. This sweeping prohibition encompasses a substantial number of uses of the seal that would not suggest government endorsement, such as the display on a website of an exact copy of an official County news release that contains the image of the seal next to the text, or the publication in a newspaper of a photograph of a County official delivering a speech from a podium upon which the County seal is attached and visible. Comparison of the County's regulation of the seal with the federal law governing the use of national government seals is illuminating. Title 18, Section 713 regulates the use of likenesses of the great seal of the United States, the seals of the President and Vice President, the seal of the United States Senate, the seal of the United States House of Representatives, and the seal of the United States Congress. It provides for criminal penalties for the knowing display of "any printed or other likeness . . . or any facsimile" of the aforementioned seals "for the purpose of conveying, or in a manner reasonably calculated to convey, a false impression of sponsorship or approval by the Government of the United States or by any department, agency, or instrumentality thereof." 18 U.S.C. § 713(a).[10] The carefully drawn proscription presented in the federal law stands in marked contrast to the blanket prohibition here. The County ordinance curbs too much expression to be narrowly tailored to further the County's legitimate interest in preventing the seal's deceptive or misleading use. Under intermediate scrutiny, the ordinance's overinclusive reach is fatal. The County has failed to show that the ordinance is narrowly tailored to achieve its purpose of preventing the use of the seal to convey a false impression of government sponsorship or approval.

---

[10] For another example of a narrowly tailored provision, consider 18 U.S.C. § 715, which restricts use of "The Golden Eagle Insignia." The insignia consists of the words "The Golden Eagle" and the representation of the American Golden Eagle and a family group enclosed within a circle and framed by a rounded triangle. Section 715 criminalizes reproduction or use of the insignia or any facsimile thereof "in such a manner as is likely to cause confusion, or to cause mistake, or to deceive."

18

The County alludes to another interest it has in restricting the display of the seal: its interest in using its own property as it sees fit. The County takes the position that the showing of the seal by private citizens is not a form of expression at all; rather, the seal is government property, like a government vehicle or other form of personal property. The County states that Rothamel has no more right to display the County seal than he does to drive the County's automobile. Equating the appropriation of physical government property with the use of a likeness of an official government seal for expressive purposes does not pass muster in light of the history of treating private, expressive use of government emblems as private speech or expression. *See Spence v. Washington*, 418 U.S. 405, 408-09 (1974) (distinguishing expression associated with privately-owned American flag from use of a flag that was government property); *Texas v. Johnson*, 491 U.S. 397, 413-15 (1989) (recognizing that even though the American flag serves as an important symbol of nationhood, the government is not permitted to control the message expressed by a private citizen's use of the flag); *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 632 (1943) (stating that use of an emblem or flag often takes a form of symbolism comprising a "primitive but effective way of communicating ideas" and "a short cut from mind to mind"); *cf. Time, Inc. v. Regan*, 539 F. Supp. 1371, 1383 (S.D.N.Y. 1982) (treating reproductions of images of United States currency in magazines as protected speech), *aff'd in part, rev'd in part on other grounds*, 468 U.S. 641 (1984) (implicitly accepting lower court's treatment of private use of images of currency in magazines as speech). While the County is correct that Rothamel does not have the right to take possession of a physical seal owned by the County, the County cannot control all privately-owned images or representations of the seal simply by declaring an interest in managing its own property. The First Amendment requires a more specific and substantial interest in restricting speech than the broad desire to safeguard

19

government property. The County asserts that the central issue of this case is "the extent to which the County can protect its own property from misuse." Def.'s Resp. Mot. Summ. J. at 4. The only form of misuse of the likeness of the seal identified by the parties, however, is its display in such a manner as to imply County sponsorship or approval of a private message with which the County has not agreed to be associated. As I stated above, this ordinance is not particularly adapted to preventing deceptive displays of the seal's image.

I pause to note the property-based arguments that have not been asserted by the County as grounds for curtailing private display of the seal and of which I express no opinion. The County has not claimed that it has a substantial and important interest in limiting the seal's use *because* the County originally designed the emblem. Nor has the County claimed that its "own talents and energy," through "much time, effort, and expense," produced a seal that held considerable value. *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 533 (1987) (upholding law awarding the United States Olympic Committee the exclusive right to use the word "Olympic" for commercial and promotional purposes) (quoting *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 575 (1977)). It has not argued that even where display of the seal by private actors does not convey a false impression of government sponsorship, unconstrained display of the seal by the public dilutes the value of the seal as a unique signifier of County government. *See S.F. Arts & Athletics*, 483 U.S. at 539 (recognizing that most of the value of the word "Olympic" comes from its limited use). If there is merit to the County's interest in protecting its intangible property, the County has not met its burden of articulating a property interest sufficiently particular and important to meet its burden under the First Amendment.

20

The County insists that the ordinance remains constitutional under the theory that any display of the seal is government speech that the County can constitutionally control. The County begins with the well-founded proposition that the Free Speech Clause of the First Amendment does not regulate government speech, it only restricts government regulation of private speech. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005). A government entity "is entitled to say what it wishes," *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995), and to select the views it wants to express, *see Rust v. Sullivan*, 500 U.S. 173, 194 (1991). The County argues that the seal conveys the imprimatur of government approval of the speech accompanying it and therefore speech associated with the use of the seal is government speech, regardless of whether it was spoken by a private citizen or approved by the government. As government speech, the County argues that it may be regulated like any piece of government property and without concern for the First Amendment. The County cites *Pleasant Grove City v. Summum*, 555 U.S. 460, 129 S. Ct. 1125 (2009) as authority supporting its stance on this issue. In *Pleasant Grove City*, the Supreme Court held that Pleasant Grove City's placement, in a public park, of permanent monuments built and donated by private groups was a form of government speech and therefore was not subject to scrutiny under the Free Speech Clause. 129 S. Ct. at 1129. It reasoned that persons who observe donated monuments displayed on public property routinely and reasonably interpret them as conveying some message on the property owner's behalf. *Id.* at 1133. When governmental bodies accept donated monuments and place them on public property, the monuments are meant to convey and have the effect of conveying a government message. *Id.* at 1134. The Court emphasized that cities take some care in determining which monuments among those offered for donation to select for

21

permanent display, as the character of city parks plays an important role in defining the identity that a city projects to others. *Id.*

Importantly, the Court in *Pleasant Grove City* did not consider the monuments to be government speech simply because they became government property upon their acceptance by the government from private donors. Instead, the monuments represented government speech because governments intend the exhibition of monuments in public spaces to transmit a message, and persons visiting those monuments view those monuments as communicating a public message. The circumstances under which the Court treated public monuments as government speech are quite different from those in this case. Here, every use of the seal plainly does not have the effect of imparting a government message, nor is every use intended by the government to communicate something. Indeed, the County concedes that the display of the seal next to news commentary on Rothamel's blog and the reproduction of news releases containing the seal do not convey the impression of government sponsorship of the blog. Thus, the use by a private individual of a government emblem like a seal is private speech or expression, not government speech.

For the reasons I have discussed, and in consideration of the County's concession that Rothamel's display of the seal on his blog does not convey a false impression of government approval of his speech, I hold that the ordinance violates the Free Speech Clause of the First Amendment as applied to Rothamel's uses. Rothamel further claims that the ordinance bans a substantial amount of free expression and is therefore overbroad. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 n.6 (2008) (stating that a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep") (internal quotation marks omitted). Having

found the ordinance unconstitutional as applied to Plaintiff's employment of the seal, I need not consider the ordinance's facial sufficiency. *See Texas*, 491 U.S. at 403 n.3 (declining to address facial constitutionality argument); *Spence*, 418 U.S. at 414 n.9 (same).

As to relief, this Court should declare that the County's ordinance violates the Free Speech Clause of the First Amendment when applied to Rothamel's display of the seal. *See Steffel*, 415 U.S. at 475 (stating that declaratory relief may be appropriate on a First Amendment as-applied challenge to the threatened enforcement of a state criminal law). I will grant Rothamel a permanent injunction that prohibits the County from enforcing the ordinance against him for the two ways in which Rothamel had been displaying and wishes to continue displaying the County seal. Under "well-established principles of equity," a plaintiff seeking a permanent injunction must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Legend Night Club*, 637 F.3d at 297 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The chilling of Rothamel's expressive activity since the promulgation of the ordinance, causing Rothamel to forgo constitutionally protected activity out of a fear of arrest, thus constitutes irreparable injury. Monetary damages are inadequate to compensate for the loss of First Amendment freedoms. *Legend Night Club*, 637 F.3d at 302. Considering the balance of hardships, the deprivation of Rothamel's First Amendment freedoms easily outweighs whatever burden the injunction imposes on the County, which has represented that it would not enforce the

ordinance against Rothamel anyway. Finally, "upholding constitutional rights is in the public interest." *Id.* at 303. Each of the factors for issuing a permanent injunction is satisfied.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Plaintiff's Motion for Summary Judgment and issue a permanent injunction prohibiting the enforcement of the County's ordinance against Plaintiff's display of the seal on his blog in the manner discussed in this opinion. Defendant's motion for summary judgment will be denied.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ___2nd___ day of September, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

24